**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JORGE M. GUZMAN,

      Appellant,

      v.

DEPARTMENT OF HOMELAND
  SECURITY,

      Agency.

DOCKET NUMBERS
SF-0752-15-0170-P-3
SF-0752-15-0170-P-4

DATE: January 6, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

James P. Walsh, Esquire, Long Beach, California, for the appellant.

Carolyn D. Jones, Esquire, Williston, Vermont, for the agency.

Dawn M. Harris, Philadelphia, Pennsylvania, for the agency.

John B. Barkley, Esquire, Phoenix, Arizona, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## REMAND ORDER

¶1	The agency has filed a petition for review and the appellant has filed a cross petition for review of the addendum initial decision, which granted in part the appellant's motions for consequential and compensatory damages pursuant to 5 U.S.C. § 1221(g)(1)(A)(ii). For the reasons discussed below, we GRANT the agency's petition for review and deny the appellant's cross petition for review. We AFFIRM the administrative judge's finding that the appellant is not entitled to recover damages based on the 2011 withdrawal of funds from his Thrift Savings Plan (TSP) account or for business expenses and start-up capitalization. We VACATE as duplicative the administrative judge's finding that the appellant is entitled to back pay and related benefits as consequential damages. We further VACATE the administrative judge's analysis of the appellant's entitlement to damages for medical expenses and treatment and nonpecuniary compensatory damages. We REMAND the case to the Western Regional Office for the administrative judge to adjudicate the appellant's entitlement to medical expenses and treatment and nonpecuniary compensatory damages in accordance with this Remand Order.

## BACKGROUND

¶2	The following facts, as recited in the addendum initial decision, are generally undisputed. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-P-3, Appeal File (P-3 AF), Tab 20, Addendum Initial Decision (AID). The administrative judge reversed the removal action because the agency failed to prove its charge and because the appellant proved his affirmative defense of whistleblower reprisal. AID at 2, 4-5; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-I-2, Initial Decision (ID) at 27, 39 (Sept. 29, 2017). The merits initial decision became the Board's final decision when neither party filed a petition for review. AID at 1.

¶3      The appellant filed timely motions for compensatory and consequential damages, and the matters were joined.  AID at 2; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-P-1, Appeal File (P-1 AF), Tab 3 at 2; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-P-2, Appeal File, Tab 3 at 2.[2]  The joined matters were dismissed without prejudice and refiled.  AID at 2; P-1 AF, Tab 29; P-3 AF, Tab 1; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-P-4, Appeal File, Tab 1.[3]  A hearing was held.  AID at 2; P-3 AF, Tabs 11, 16.

¶4      The administrative judge issued an addendum initial decision, which granted in part the appellant's motions for consequential and compensatory damages.  AID at 2.  In particular, she found that the expanded damages provisions under the Whistleblower Protection Enhancement Act of 2012 (WPEA) applied because the removal action occurred after the WPEA's effective date.[4]  AID at 5-6.  She determined that the appellant was entitled to back pay and related benefits as consequential damages.  AID at 7-9.  The administrative judge also awarded as consequential damages $12,956 for medical expenses and treatment and future medical expenses.[5]  AID at 12-14.  However, she concluded that the appellant was not entitled to recover consequential damages for the following:  (1) the lost value of a 2011 withdrawal from his TSP investment, related penalties, and lost earnings, as well as expert witness fees that he incurred to support his claim of entitlement to such damages; and (2) business expenses

---

[2] Because the P-1 and P-2 matters were joined, we will only cite to "P-1 AF."

[3] Because the P-3 and P-4 matters were joined, we will only cite to "P-3 AF."

[4] Neither party challenges the administrative judge's ruling in this regard.

[5] The administrative judge noted that the appellant's request for pecuniary compensatory damages was coextensive with his request for consequential damages, and she stated that the request for pecuniary damages was granted to the full extent found therein and was otherwise moot.  AID at 2.

and start-up capitalization.[6] AID at 10-12, 15-17. Finally, she found that the appellant was entitled to an award of $250,000 in nonpecuniary compensatory damages. AID at 2, 17-26.

¶5    The agency has filed a petition for review, the appellant has filed a response, and the agency has filed a reply. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-P-3, Petition for Review (P-3 PFR) File, Tabs 1, 3, 5. The agency certifies that it has begun the process to pay the appellant $945 for pecuniary damages and $5,000 in nonpecuniary damages, but it contests on review the remaining amounts awarded to the appellant. P-3 PFR File, Tab 1 at 28. The appellant has filed a cross petition for review, and the agency has filed a response. P-3 PFR File, Tabs 3, 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

Legal Standard[7]

¶6    As the prevailing party in a Board appeal in which the administrative judge ordered corrective action based upon a finding of whistleblower reprisal, the appellant is entitled to an award of "backpay and related benefits, medical costs incurred, travel expenses, any other reasonable and foreseeable consequential damages, and compensatory damages (including interest, reasonable expert

---

[6] The appellant does not challenge the administrative judge's decision not to award damages for business expenses and start-up capitalization because they were not reasonably foreseeable losses. *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-P-3, Petition for Review File, Tab 3 at 15-16. We discern no error with the administrative judge's analysis in this regard, and we affirm her finding herein. *See, e.g.*, 5 U.S.C. § 1221(g)(1)(A)(ii) (stating that corrective action may include "reasonable and foreseeable consequential damages").

[7] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit. However, as a result of changes initiated by the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, § 108, 126 Stat. 1465, 1469, extended for 3 years in the All Circuit Review Extension Act, Pub. L. No. 113-170, § 2, 128 Stat. 1894 (2014), and eventually made permanent in the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510 (2018), we must consider this matter with the view that the appellant may seek review of this decision before any appropriate court of appeal. *See* 5 U.S.C. § 7703(b)(1)(B).

witness fees, and costs)." 5 U.S.C. § 1221(g)(1)(A)(ii); *see King v. Department of the Air Force*, 122 M.S.P.R. 531, ¶ 7 (2015).

¶7        Compensatory damages include pecuniary losses, future pecuniary losses, and nonpecuniary losses such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. *Hickey v. Department of Homeland Security*, 766 F. App'x 970, 976-77 (Fed. Cir. 2019);[8] 5 C.F.R. § 1201.201(c). Compensatory damages are designed to compensate the appellant for actual harm, not to punish the agency. *Hickey*, 766 F. App'x at 977. To be entitled to compensatory damages, an appellant must prove that the emotional harm was actually caused by the retaliatory activities determined to have been unlawful and the damages sought reflect the nature and severity of the harm and its duration or expected duration.[9] *Id.* at 977-78.

¶8        To receive an award of consequential damages, an appellant must prove that he incurred consequential damages and that his claimed damages were reasonable, foreseeable, and causally related to the agency's prohibited personnel practice. *King*, 122 M.S.P.R. 531, ¶ 7 (citing *Johnston v. Department of the Treasury*, 100 M.S.P.R. 78, ¶ 13 (2005)); *see* 5 C.F.R. § 1201.202(b).

---

[8] The Board may follow a nonprecedential decision of a court when, as here, it finds its reasoning persuasive. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 16 n.6.

[9] The administrative judge correctly noted that case law regarding compensatory damages in whistleblower reprisal cases is undeveloped, and she stated that it was appropriate to apply the case law pertaining to compensatory damages in Equal Employment Opportunity Commission (EEOC) cases by analogy and to give persuasive authority to the regulatory guidance of the EEOC as it pertains to compensatory damages. AID at 17. Both parties acknowledge that there is sparse case law on compensatory damages awarded pursuant to 5 U.S.C. § 1221(g). P-3 PFR File, Tab 1 at 13, Tab 3 at 16. The agency does not challenge the administrative judge's decision to look at EEOC compensatory damages cases by analogy. P-3 PFR File, Tab 1 at 13. The appellant acknowledges that the Board's practice of looking at EEOC compensatory damages cases is "apt in many case[s]," but he asserts that it is not appropriate in this case because his damages exceed the EEOC's statutory cap of $300,000. P-3 PFR File, Tab 3 at 16-21. In our analysis of the appellant's entitlement to compensatory damages pursuant to 5 U.S.C. § 1221(g), we may rely on the EEOC's guidance regarding compensatory damages to the extent we find it persuasive.

**We affirm the administrative judge's finding that the appellant is not entitled to recover damages based on the withdrawal of funds from his TSP account, including penalties, lost earnings, and/or associated expert witness fees.**

¶9    The addendum initial decision reflects that the appellant sought damages for the following: (1) in October 2011, the appellant withdrew $220,000 (and received a net amount of $218,952.95) from his TSP account, largely to pay attorney fees to defend himself in 2011-2012 against various agency actions; (2) he incurred an additional tax liability of $107,871 plus interest and penalties as a result of the withdrawal; and (3) he sought to recover the lost value of that withdrawal, in the amount of $300,890, as well as $143,225 in damages for the loss of return on his investment because he had to modify his portfolio strategy to a more conservative approach. AID at 10-11.

¶10    The administrative judge found that the appellant was not entitled to recover damages for the potential loss of income and the change to his investment strategy because they were not reasonably foreseeable.[10] AID at 11. She also found that he was not entitled to recover damages for the other claimed expenses because the TSP withdrawal occurred in October 2011, approximately 3 years before the removal action at issue, and those funds were withdrawn to defend against other agency actions not at issue here, including the December 2010 execution of a search warrant, placement on administrative leave, and the subsequent investigation and first 2012 notice of proposed removal.[11] *Id.* Because these expenses were not reasonably foreseeable to the removal action, they were not recoverable. *Id.* Similarly, the administrative judge found that the appellant was not entitled to recover as damages fees for an expert witness (who evaluated the lost future value of the investment that he withdrew in 2011)

---

[10] The appellant "accepts the disallowance of claims for losses associated with his change of investment strategy" in the amount of $143,225 because it was not a reasonably foreseeable loss. P-3 PFR File, Tab 3 at 15.

[11] The appellant clarifies that he is "not here seeking the return of the $220,000—that was spent on lawyers and a Cross-Petition re: Attorney Fees is presently with the Board." P-3 PFR File, Tab 3 at 15.

because they were not related to any foreseeable injury sustained as a result of the removal action. AID at 12.

¶11     In his cross petition for review, the appellant argues that he is entitled to an award of past pecuniary damages in the amount of \$107,871 for additional tax liability, \$300,890 in lost investment value, and expert witness fees to calculate the lost investment value. P-3 PFR File, Tab 3 at 13-15. We disagree. Indeed, the appellant has offered no legal authority to support his contention that any expenses associated with his decision to withdraw substantial funds from his TSP in 2011—nearly 3 years before the March 7, 2014 notice of proposed removal and to pay fees based on other agency actions independent of the removal[12]—is a reasonable and foreseeable consequence related to the removal action. We acknowledge the appellant's argument that the administrative judge was inconsistent because she did not award damages related to the 2011 TSP withdrawal, but she awarded \$250,000 in nonpecuniary compensatory damages and "frequent[ly] reference[d] . . . the harms suffered by [the a]ppellant in the [4]-year period from July 2010 to April 2014." P-3 PFR File, Tab 3 at 13-14. Any inconsistency in this regard in the addendum initial decision does not warrant a different outcome on the issue of the appellant's entitlement to recover

---

[12] The administrative judge noted in the addendum initial decision that the appellant filed a complaint with the Office of Special Counsel (OSC) regarding his placement on administrative leave status and assignment of administrative duties, OSC issued a close out letter on April 10, 2014, and the appellant did not file an individual right of action (IRA) appeal within 65 days as directed by OSC. AID at 3. Because the appellant did not file an IRA appeal regarding these agency actions, there was no order for corrective action, and the appellant is not entitled to recover damages as a result of these agency actions. 5 U.S.C. § 1221(g)(1)(A)(ii). To the extent that there are other agency actions unrelated to the 2014 removal that the appellant has not raised with OSC, and for which he believes he is entitled to damages, there is no statutory time limit for filing a request for corrective action with OSC. 5 U.S.C. § 1214(a)(1)(A); *McCarthy v. Merit Systems Protection Board*, 809 F.3d 1365, 1375 (Fed. Cir. 2016); *Augustine v. Department of Justice*, 50 M.S.P.R. 648, 652 (1991).

pecuniary damages based on his 2011 withdrawal of funds from his TSP account, including penalties, lost earnings, and/or associated expert witness fees.[13]

<u>We vacate the administrative judge's award of back pay and related benefits as consequential damages because it is duplicative of the Board's final decision in the compliance matter.</u>

¶12    In the addendum initial decision, the administrative judge awarded as consequential damages back pay and benefits through the end of the month in which the appellant attained age 60, or July 31, 2019.  AID at 7-9.  This award arose out of the fact that, in the final decision in the merits appeal, the removal action was reversed and the agency was ordered to pay back pay and related benefits to the appellant, effective November 21, 2014 (the date of his retirement); the agency canceled the appellant's retirement, but it issued a Standard Form 50 mandatorily retiring him with an effective date of July 31, 2016, pursuant to 5 U.S.C. § 8425(b)(1).[14]  AID at 7; *Guzman v. Department of Homeland Security*, MSPB Docket No. SF-0752-15-0170-C-1, Compliance Initial Decision (CID) at 2-3 (Aug. 3, 2018); ID at 39.  After the appellant filed a petition for enforcement, the administrative judge found that the agency did not substantially comply with the Board's final decision in the merits appeal because, among other things, it did not give the appellant the required 60 days' notice before mandatorily separating him, and he was entitled to back pay to the date of his restoration, to regular pay after that date, and to proper notice.  CID at 7-8.  The administrative judge noted in the addendum initial decision that the agency

___

[13] In addition, as noted below, we are vacating the portion of the addendum initial decision that awarded the appellant $250,000 in nonpecuniary damages for further analysis of the question of whether such damages may be based, in part, on the impact of actions that predated the removal.

[14] Section 8425(b)(1) of Title 5 of the U.S. Code states, in pertinent part, that a law enforcement officer who attains the age of 57 shall be separated on the last day of the month in which he becomes 57, unless the agency head exempts him from automatic separation until the employee becomes 60 years old.  5 U.S.C. § 8425(b)(1) Additionally, section 8425(b)(1) requires that the agency "shall notify the employee in writing of the date of separation at least 60 days before that date."

filed a petition for review of the compliance initial decision. AID at 7 n.2. She explained that her award of back pay and related benefits as consequential damages was not intended to permit double recovery of back pay and benefits; rather, she clarified that the appellant was due this remedy as a result of the reversal of the agency's action and his successful whistleblower reprisal claim. AID at 8-9 & n.3.

¶13    Both parties challenge the administrative judge's decision to award back pay and related benefits as consequential damages. P-3 PFR File, Tab 1 at 25 (arguing that the administrative judge's award "assumes that [the appellant] would have been granted a [3]-year waiver of his mandatory retirement date" and unjustly enriches him), Tab 3 at 11 (contending that the administrative judge exceeded her authority by awarding back pay and benefits as part of a consequential damages award and noting that the back pay issue is pending in the compliance matter).

¶14    We agree with the appellant that it is improper to address the issue of back pay and related benefits in the damages appeal. The Board has issued an order in the compliance matter, which clarified that because the appellant has reached the age of 60, he is no longer entitled to reinstatement, but the agency is required to pay him back pay and related benefits through July 31, 2019 (the month in which he turned 60 years old) in order to be in compliance with the Board's final decision in the merits appeal. We therefore vacate as duplicative the administrative judge's finding in the addendum initial decision that the appellant is entitled to back pay and related benefits as consequential damages.

We vacate the administrative judge's award of nonpecuniary damages and remand this claim for further adjudication.

¶15    The administrative judge found that the appellant was entitled to nonpecuniary damages because of the "deleterious effect caused by the agency's retaliation" in the areas of emotional pain, suffering, mental anguish, injury to professional standing, injury to his character and reputation, and loss of

enjoyment of life. AID at 18. Importantly, the administrative judge noted that the record was replete with statements, accounts, and recollections from the appellant's children, friends, and colleagues that "make it crystal clear that [he] was harmed as a direct result of the agency's retaliatory action." AID at 22. The administrative judge considered the testimony of the appellant, his witnesses, and the statements presented, and she found that this evidence was "credible, reliable[,] and useful to assist in ascertaining the damages suffered by the appellant in this matter." *Id.* She also stated that she gave "great weight" to these statements, declarations, and testimony. *Id.* Significantly, the administrative judge considered EEOC guidance and concluded that it was appropriate to consider "the entirety of the action"—meaning from the appellant's placement on administrative duties on approximately March 1, 2013, to the November 2014 decision—in considering his entitlement to compensatory damages. AID at 3-4, 22-23 (citing, among other things, 29 C.F.R. § 1614.107(a)(5)).[15] The administrative judge concluded that, for the areas of severe, lasting injury, and for an injury extending for 5½-6 years, the appellant proved an entitlement to $250,000 in nonpecuniary compensatory damages. AID at 17-26.

¶16     On review, the agency contends that the administrative judge erred when she failed to restrict her consideration of nonpecuniary damages to the 2014 removal action. P-3 PFR File, Tab 1 at 14-15. It asserts that she explicitly considered the appellant's comments regarding the impact of his decision to report unlawful witness tampering in 2010, and she discussed the evidence stemming from the agency actions (such as an office search, grand jury investigation, and threat of prison) that predated the March 7, 2014 notice of

---

[15] This EEOC regulation states that an agency shall dismiss an entire complaint "[t]hat is moot or alleges that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory, unless the complaint alleges that the proposal or preliminary step is retaliatory."

proposed removal. *Id.* at 15. The agency also asserts that the administrative judge did not consider the appellant's preexisting conditions such as stress, post-traumatic stress disorder, anger, estrangement, and physical pain, among others. *Id.* at 15-17. Conversely, the appellant argues that the award "does not closely approach the compensation needed to give [him] a make-whole remedy" for, among other things, his "ruined reputation" and "destroyed career" and damage that "is far more severe and long-lasting than most of the cases that come before the EEOC and the Board." P-3 PFR File, Tab 3 at 19-21. Instead, the appellant advocates for an award of $1,000,000. *Id.* at 20-21.

¶17　　The administrative judge correctly noted in the addendum initial decision that the only retaliatory personnel action at issue is the removal, which led to the appellant's retirement in lieu of removal on November 21, 2014. AID at 5. She also correctly stated in the order and summary of telephonic status conference that she was only authorized to award damages that stem from the adjudicated removal action; she noted that there may have been other personnel actions, but the appellant did not file an IRA appeal, and she had no authority to award damages that emanated from other personnel actions. P-1 AF, Tab 26 at 1-2.

¶18　　Despite these statements, and her finding that an award is warranted "because there is more than adequate causal connection between the agency's retaliatory action and the appellant's injury," AID at 25, we acknowledge the agency's argument that the administrative judge improperly considered agency actions that predated the 2014 removal action as well as the impact of those actions on the appellant. *See, e.g.*, AID at 18 (noting that the appellant stated that, "from the time of his decision to report what he believed was unlawful witness tampering, he describes a 'living nightmare – a nightmare that continue to this very day'"), 19-20 (describing that, when the appellant was returned to duty on March 4, 2013, he was not given any work assignments of any consequence, and he was not included in management meetings, or on management emails, among other things), 21 (describing the appellant's wife's testimony about the

appellant when he was on administrative leave and administrative duties). We agree that the administrative judge did not clearly explain her rationale for awarding damages in this regard, particularly where she appeared to rely on agency actions that predated the 2014 removal action.

¶19    We wish to briefly discuss one issue that was not raised by the administrative judge or the parties. The WPEA added 5 U.S.C. § 1221(g)(4), which states that "[a]ny corrective action ordered under this section to correct a prohibited personnel practice may include . . . damages reasonably incurred due to an agency investigation of the employee, if such investigation was commenced, expanded, or extended in retaliation for the disclosure . . . that formed the basis of the corrective action."  According to the legislative history, section 1221(g)(4) "create[d] an additional avenue for financial relief once an employee is able to prove a claim under the [whistleblower protection statutes], if the employee can further demonstrate that an investigation was undertaken in retaliation for the protected disclosure."  S. Rep. No. 112-155, at 21 (2012); *see Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020) (concluding that retaliatory investigations do not qualify as personnel actions under the whistleblower protection statutes, but they "may provide a basis for additional corrective action if raised in conjunction with one or more of the qualifying personnel actions specified by [5 U.S.C.] § 2302(a)(2)(A)").[16]

¶20    In analyzing the appellant's whistleblower reprisal claim in the merits appeal, the administrative judge noted that the appellant provided preponderant evidence that his 2010 disclosure prompted the agency to initiate the credentials investigation, which led to the agency reopening the investigation into the 2004 microphone discovery, the culmination of which was the removal action.  ID at 34.  If an agency investigation was "commenced, expanded, or extended in retaliation for" the appellant's whistleblowing disclosure, the appellant may be

---

[16] The appellant's chapter 75 removal was a personnel action pursuant to 5 U.S.C. § 2302(a)(2)(A)(iii).

entitled to "damages reasonably incurred" due to any such investigation—as long as such damages were incurred after the December 27, 2012 effective date of the WPEA. 5 U.S.C. § 1221(g)(4); *King v. Department of the Air Force*, 119 M.S.P.R. 663, ¶ 3 (2013). However, because the applicability of 5 U.S.C. § 1221(g)(4) is an issue of first impression before the Board that was not raised by or before the administrative judge, the parties were not given an opportunity to brief the applicability of this provision or its impact on the appellant's entitlement to compensatory and/or consequential damages. Accordingly, we vacate the administrative judge's analysis and remand the issue of the appellant's entitlement to nonpecuniary compensatory damages for further adjudication.[17]

¶21        As noted above, the administrative judge held a hearing and made implicit demeanor-based credibility determinations. AID at 22; *see Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (finding that the Board must defer to an administrative judge's demeanor-based credibility determinations "[e]ven if demeanor is not explicitly discussed"). The administrative judge therefore is in the best position to reevaluate the evidence and analyze the issues that we have discussed herein. Accordingly, we remand the appeal to the administrative judge to issue a new addendum initial decision that incorporates our findings and evaluates the appellant's entitlement to nonpecuniary compensatory damages based on the removal action per 5 U.S.C.

---

[17] We are not persuaded by the administrative judge's reliance on 29 C.F.R. § 1614.107(a)(5) to justify her consideration of the appellant's assignment of administrative duties in March 2013 as part of a damages award related to the removal. AID at 22-23. The administrative judge noted that the appellant exhausted his claim with OSC that the agency's decision to place him on administrative duties was retaliatory, and he could have filed, but did not file, an IRA appeal regarding this claim. AID at 3. If the appellant had filed an IRA appeal and was successful, he could have been granted corrective action and awarded damages based on the assignment of administrative duties. Because the appellant failed to file an IRA appeal regarding the assignment of administrative duties (or any other personnel action), our authority under 5 U.S.C. § 1221(g)(1)(A)(ii) to award damages only stems from the removal action.

§ 1221(g)(1)(A)(ii) and, if applicable, 5 U.S.C. § 1221(g)(4).[18] The new addendum initial decision should include a thorough and specific explanation for the administrative judge's award of damages in this regard. *See, e.g.*, *Hickey*, 766 F. App'x at 978 (noting that Mr. Hickey's request for compensatory damages included all of his original claims in his IRA appeal, instead of the three instances of misconduct for which the Board determined he was entitled to recover, and concluding that he was only entitled to recover compensatory damages for the three instances of unlawful misconduct); *see generally* EEOC Enforcement Guidance: Compensatory and Punitive Damages Available Under § 102 of the Civil Rights Act of 1991, 1992 WL 1364354, at *5 (July 14, 1992) (EEOC Guidance) ("An award for emotional harm is warranted only if there is sufficient causal connection between the [agency's] illegal actions and the complaining party's injury.").

<u>We also vacate the administrative judge's award of damages for the appellant's medical expenses and treatment and remand for further adjudication.</u>

¶22        In her analysis of the appellant's entitlement to damages for medical expenses and treatment, the administrative judge noted that the relevant time frame started on March 7, 2014 (the notice of proposed removal), and it was undisputed that, starting on this date, the appellant had uncovered medical expenses consisting of copays for psychiatric, psychological, and primary care providers. AID at 12. She also discussed the appellant's self-report that (1) his mental health declined between April and November 2014, (2) he was "falling apart," (3) he had stomach disorders, chest pains, depression, and stress, (4) he attributed these problems to the agency's retaliation against him, and (5) these problems continue to adversely impact his health. AID at 13. The administrative

---

[18] Because we are vacating and remanding this claim for damages, we need not address the parties' substantive arguments on review relating to this claim. However, the administrative judge has discretion to reopen the record to allow the parties to present evidence and/or argument on the specific issues that are being remanded.

judge awarded $630 for past psychiatric care from April 2014 to February 2018, $800 for the period from February 2018 to September 2020, and $960 for future psychiatric care copays for 3 years, for a total of $2,390. *Id.* The administrative judge acknowledged that the appellant's therapist passed away and her records were not included in the Board's record, concluded that the appellant was entitled to recover out-of-pocket expenses for therapy and counseling, and awarded $7,200 for psychological counseling for 3 years. AID at 13-14.

¶23    Regarding his primary care physician, the administrative judge acknowledged that "not all of each office visit was due to issues related to the mental and physical impacts suffered as a result of the agency's actions," but she found that "80% of the charges incurred since April 2014 are fairly attributable, directly or indirectly, to the agency, and should be borne by the agency to recompense for the appellant's out of pocket expenses."[19]  AID at 14.  The administrative judge therefore awarded the appellant an additional $1,866 for expenses incurred from April 2014 through October 2017, and $1,500 for future copays from November 2017 for a period of 3 years.  *Id.*

¶24    On review, the agency argues, among other things, that the administrative judge erred in her award because (1) the appellant lacked documentary corroboration to support his claim of damages for psychological counseling, (2) the administrative judge's factual determinations, especially related to future damages, were purely speculative, and (3) she did not consider the appellant's preexisting conditions. P-3 PFR File, Tab 1 at 7-12. In pertinent part, the agency argues that "[p]roceeding solely by dates of treatment after a certain time period, without any evidence or inquiry as to the possible alleviation or termination of a prior condition, is a factual error that would result in a different award of

---

[19] The administrative judge stated that it was appropriate to measure the appellant's damages based on primary care visits from "April 2014, the close out of the OSC complaint." AID at 14. We clarify that OSC's decision to close his complaint in April 2014 has no bearing on the appellant's entitlement to damages because he did not file an IRA appeal.

pecuniary damages." *Id.* at 9. The appellant does not respond substantively to the agency's arguments, but he "accepts" the administrative judge's award of damages in this regard. P-3 PFR File, Tab 3 at 15.

¶25    Here, too, we have concerns that the administrative judge has not sufficiently linked the appellant's claim for damages for medical expenses and treatment to the removal action. Significantly, the administrative judge considered the appellant's conditions and agency actions that predated the March 7, 2014 notice of proposed removal. For example, she noted that the appellant's medical needs before 2010 were "sporadic" but that he "presented himself to obtain medical care as a result of the impact of the agency's actions towards him." AID at 13. She noted that the appellant reported that it was "particularly devastating" that the agency placed him on administrative duties instead of restoring him to his management role after the first notice of proposed removal was not sustained. *Id.* It is also problematic that the administrative judge seems to have automatically credited most of the appellant's medical appointments that postdated the March 7, 2014 notice of proposed removal because the chronology is not necessarily dispositive. Indeed, the appellant's entitlement to damages related to the removal is complicated, in part, because of the protracted litigation between the parties and the fact that the appellant may have suffered from medical conditions due to various agency actions that predated the March 7, 2014 notice of proposed removal.

¶26    Ultimately, we find that the administrative judge's analysis does not clearly and sufficiently link the appellant's entitlement to damages for medical expenses and treatment (past and future) to the 2014 removal action. *See Hollingsworth v. Department of Commerce*, 117 M.S.P.R. 327, ¶ 11 (2012) (finding that—even accepting the assertions of the appellant, her family friends, and clergy that her medical conditions worsened after the agency removed her—that alone did not establish a causal connection between the agency's acts and the worsening of the appellant's conditions); *see generally* EEOC Guidance, 1992 WL 1364354, at *4

("To recover damages [for pecuniary losses], the complaining party must prove that the employer's discriminatory act or conduct was the cause of his loss."). Moreover, the administrative judge did not discuss 5 U.S.C. § 1221(g)(4) or its applicability to the appellant's claim of reimbursement of medical expenses and treatment, and the parties were not given an opportunity to brief this issue. Accordingly, we vacate the administrative judge's analysis of the appellant's entitlement to reimbursement of medical expenses and treatment, and we remand this claim so that the parties can brief the issues relating to 5 U.S.C. § 1221(g)(4) and any other issues deemed appropriate by the administrative judge in this regard. The administrative judge should reevaluate the appellant's claim of entitlement to medical expenses and treatment both in relation to the removal action, per 5 U.S.C. § 1221(g)(1)(A)(ii) and, if applicable, 5 U.S.C. § 1221(g)(4), and issue a new addendum initial decision that explains her findings.[20]

---

[20] On remand, the administrative judge should review and, if necessary, correct some of her calculations. For example, the agency contests the award of $1,866 for medical expenses incurred with the appellant's primary care physician. P-3 PFR File, Tab 1 at 9; AID at 14. We agree that the amount awarded does not appear to match the administrative judge's explanation of how she derived that amount and the cited record evidence. AID at 14; P-1 AF, Tab 18 at 64. Without further explanation from the administrative judge, we cannot assess the merits of the agency's other arguments regarding this expense. On remand, the administrative judge should make new findings regarding the medical expenses claimed related to the primary care physician and explain her rationale. Additionally, for future psychiatric care copays for 3 years at $25.00 per month, the total would appear to be $900, not $960. AID at 13.

**ORDER**

¶27      For the reasons discussed above, we remand this case to the Western Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

_____/s/ for_____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.